# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

BRENDA NORMAN,           )
                                 )
             Plaintiff,        )
                                 )      No. 1:04-CV-111 CAS
         v.                  )
                                 )
UNITED STATES OF AMERICA,   )
                                 )
             Defendant.     )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant United States of America's motion to dismiss or in the alternative for summary judgment, directed to plaintiff's Second Amended Complaint.[1] Plaintiff Brenda Norman opposes the motion, which is now fully briefed. For the following reasons, the Court will grant defendant's motion to dismiss and will also grant its alternative motion for summary judgment.

**Background**.

Brenda Norman filed this action under the Federal Tort Claims Act, 28 U.S.C. § 1346, for the wrongful death of her husband, Robert A. Norman. Plaintiff alleges that on December 9, 2002, Mr. Norman went to the John J. Pershing V.A. Medical Center in Poplar Bluff, Missouri to seek medical advice for shortness of breath, numbness in his left arm, fatigue, ringing in his ears, and

---

[1]Defendant's motion to dismiss and/or for summary judgment was filed September 21, 2005 and directed to plaintiff's original complaint. On December 9, 2005, plaintiff was granted leave to file her First Amended Complaint, which asserted a new claim for lost chance of recovery. Plaintiff subsequently filed her sur-reply in opposition to the motion. On January 31, 2006, plaintiff was granted leave to file her Second Amended Complaint, which included allegations concerning administrative exhaustion of her claim. The Court informed the parties by docket text orders dated December 21, 2005 and January 31, 2006 that it would treat defendant's motion and all subsequent briefing as if it had been directed to the amended complaints.

intermittently sharp chest pains.[2]  Mr. Norman was seen by Dr. Ihsan U. Haq, M.D., and after consultation with Dr. Haq was sent home without further medical treatment, but was referred to a pulmonologist for a consultation three weeks later.  Shortly after midnight on December 10, 2003, Mr. Norman began having chest pains and died of a massive heart attack.

In the Second Amended Complaint ("complaint"), plaintiff asserts claims for wrongful death (Count I), and as personal representative of the estate of Robert A. Norman, for lost chance of recovery (Count II).  Defendant moves to dismiss the complaint for plaintiff's failure to comply with Mo. Rev. Stat. § 538.225, the Missouri health care affidavit statute.  Defendant also moves to dismiss on the grounds that (1) expert medical testimony is required in a medical malpractice case and plaintiff has failed to designate a testifying medical expert witness; and (2) plaintiff's theory of res ipsa loquitur is inapplicable to this case and cannot overcome her lack of expert testimony.  Defendant moves in the alternative for summary judgment on the basis that there is no genuine issue of material fact with respect to plaintiff's claims.

## Jurisdiction

"The FTCA generally waives the federal government's sovereign immunity for certain torts committed by government employees.  The Act allows suits against the United States for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where

_____

[2]Plaintiff's Second Amended Complaint alleges that Mr. Norman went to the V.A. Hospital on December 9, 2003, but records attached to the complaint concerning administrative exhaustion show that Mr. Norman actually was seen on December 9, 2002.  The discrepancy between the date as alleged by plaintiff and as shown in the documents attached to her complaint is not material for purposes of the instant motion.

the United States, if a private person, would be liable to the claimant.' 28 U.S.C. § 1346 (b)(1)." Demery v. United States Dep't of Interior, 357 F.3d 830, 832 (8th Cir. 2004).

The FTCA waives the United States' sovereign immunity, with certain limitations not applicable in the instant case, and when certain jurisdictional prerequisites have been met. See 28 U.S.C. §§ 2674-75. One of those prerequisites is the presentment by the plaintiff of her claim to the appropriate Federal agency and the agency's denial of that claim. See 28 U.S.C. § 2675(a). "Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994). This prerequisite has been satisfied and therefore this Court has subject matter jurisdiction over this action against the United States pursuant to 28 U.S.C. § 1346(b)(1). Venue in the Eastern District of Missouri is proper pursuant to 28 U.S.C. § 1402(b) because the acts and omissions complained of occurred in this District and also the plaintiff resides in this District.

**Motion to Dismiss Standard**.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. A complaint shall not be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of her claim. Id.; see also Neitzke v. Williams, 490 U.S. 319, 327 (1989). When ruling on a motion to dismiss, this Court must take the allegations of the complaint as true and liberally construe the complaint in a light most favorable to the plaintiff. Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir.), cert. denied, 540 U. S. 825 (2003).

**Discussion**.

## I.

Courts decide FTCA claims under the law of the state where the tort occurred. 28 U.S.C. § 1346(b) (1982); Budden v. United States, 15 F.3d 1444, 1449 (8th Cir. 1994). Accordingly, Missouri law applies to this case. The Missouri health care affidavit statute provides in pertinent part:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonable prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

§ 538.225.1 (2000).

Defendant moves to dismiss both counts of the complaint on the basis that plaintiff has failed to file an affidavit stating she has obtained a written opinion of a legally qualified healthcare provider certifying the merits of her cause of action as required by § 538.225, Mo. Rev. Stat. Plaintiff responds that the health care affidavit statute is inapplicable to her case because the doctrine of res ipsa loquitur permits her to make a submissible case of negligence without the use of expert testimony. Plaintiff also asserts that she can make a submissible case of lost chance of recovery through the use of statistical evidence.

Defendant replies that res ipsa loquitur cannot be used in this type of medical negligence case under applicable Missouri precedent, and that plaintiff cannot prevail on her lost chance of recovery claim because there is no evidence that Mr. Norman communicated his relevant symptoms to the Veterans' Administration doctor who is alleged to have been negligent. Plaintiff asserts in her sur-

response that res ipsa loquitur applies under the facts of this case to both her wrongful death and lost chance of survival claims. The Court must therefore determine whether the doctrine of res ipsa loquitur enables plaintiff to make a submissible case of negligence in the absence of expert medical testimony.

Under Missouri law, res ipsa loquitur is a rule of evidence which allows a submissible issue of negligence to be inferred "from circumstantial evidence that the plaintiff's injury resulted from some negligent act of the defendant without requiring the plaintiff to prove specific negligence." Guffey v. Integrated Health Servs. of Kansas City at Alpine North, 1 S.W.3d 509, 514 (Mo. Ct. App. 1999). "The doctrine serves to aid an injured party who does not know and cannot plead the specific cause of the injury." Graham v. Thompson, 854 S.W.2d 797, 799 (Mo. Ct. App. 1993). Res ipsa loquitur is incompatible with pleading or proof of specific negligence. Bonnot v. City of Jefferson City, 791 S.W.2d 766, 769 (Mo. Ct. App. 1990). To succeed on a claim based on res ipsa loquitur, the plaintiff must show that:

> (1) the incident causing the injury is of the kind that does not ordinarily occur in the absence of negligence; (2) the instrumentality causing the injury is under the control of the defendant; and (3) the defendant has superior knowledge as to the cause of the injury.

Guffey, 1 S.W.3d at 514.

"[W]hether the facts alleged in a petition are sufficient to invoke the res ipsa doctrine is a question of law." Watts v. Sechler, 140 S.W.3d 232, 241 (Mo. Ct. App. 2004). "The question is answered when the court can take judicial notice, based on common knowledge and experience, that such an injury probably would not have occurred but for negligence in some form." Id. (quoting Epps v. Ragsdale, 429 S.W.2d 798 (Mo. Ct. App. 1968)).

Missouri courts have held that the doctrine of res ipsa loquitur generally does not apply in medical malpractice cases because in most instances, the intricacies of medical treatment and negligence are not within the common knowledge of lay persons. Id. (citing Hasemeier v. Smith, 361 S.W.2d 697, 700 (Mo. 1962) (en banc)). For res ipsa loquitur to apply in a malpractice action, a lay jury must be able to find, based on common knowledge or experience, that a given result would not have occurred but for the physician's negligence. Hasemeier, 361 S.W.2d at 701. The Missouri Supreme Court appears to have restricted the application of res ipsa loquitur in medical malpractice actions to situations where a patient received treatment for one problem and incurred an unusual injury, or a surgeon left a foreign object in an operative cavity. Id. at 700.

Examples of cases in which res ipsa loquitur has been held applicable in medical malpractice actions include Zumwalt v. Koreckij, 24 S.W.3d 166 (Mo. Ct. App. 2000) (plaintiff sustained injury to her right hand, arm and shoulder during knee replacement surgery); Graham, 854 S.W.2d at 799 (plaintiff sustained injuries to the back of her right calf following surgery on the top of her right foot); Calvin v. Jewish Hospital of St. Louis, 746 S.W.2d 602 (Mo. Ct. App. 1988) (patient suffered injury to her arm while undergoing back surgery); Swan v. Tygett, 669 S.W.2d 590 (Mo. Ct. App. 1984) (patient suffered a burn to her chest while undergoing surgery within her vaginal cavity); Goodenough v. Deaconess Hospital, 637 S.W.2d 123 (Mo. Ct. App. 1982) (patient suffered a neck injury from being improperly positioned on a table for a proctoscope examination); Crump v. Piper, 425 S.W.2d 924 (Mo. 1968) (foreign object was left inside a patient after surgery). In all of these cases, lay persons "could determine from common knowledge and experience that the injury would not have occurred but for the physician's negligence without the aid of expert testimony." Deveney v. Smith, 812 S.W.2d 810, 815 (Mo. Ct. App. 1991)

In contrast, res ipsa loquitur was inapplicable and medical expert testimony was required to make a submissible case in cases with facts falling outside of the two narrow categories identified in the Hasemeier decision, including Hasemeier itself, 361 S.W.2d at 700 (res ipsa loquitur inapplicable to claim for death of plaintiff's wife in childbirth following a Caesarean section, because laymen would not know, based on common knowledge or experience, either that a Caesarean would not have been performed on the wife but for the defendant's negligence, or that a patient ordinarily does not die in childbirth unless the physician in charge was negligent); Spears v. Capital Region Medical Center, 86 S.W.3d 58, 61 (Mo. Ct. App. 2000) (plaintiff needed expert testimony and could not proceed under res ipsa theory on claim that he was infected with Hepatitis C while a patient at defendant hospital); Deveney, 812 S.W.2d at 815 (laymen could not determine from common knowledge and experience that plaintiff's injury would not have occurred but for defendant oral surgeon's alleged negligence in damaging nerves when he removed two wisdom teeth, leaving plaintiff without feeling and sense of taste in portions of his mouth; trial court properly refused to allow res ipsa submission to jury).

In this case, plaintiff's complaint is properly dismissed for failure to file the health care affidavit unless the doctrine of res ipsa loquitur applies, because she asserts claims against a health care provider for death and for lost chance of survival caused by the alleged negligent failure to render adequate health care services. See § 538.225. Plaintiff's allegations that Dr. Haq failed to provide adequate treatment to Mr. Norman do not fall within the narrow categories of medical negligence cases to which res ipsa loquitur may be applied under Missouri law, because plaintiff does not allege that Mr. Norman received treatment for one problem and incurred an unusual injury, or that a surgeon left a foreign object in an operative cavity. See Hasemeier, 361 S.W.2d at 700. This case

is not appropriate for res ipsa loquitur because heart attacks regularly occur without someone's negligence, and consequently causation cannot be presumed.  See, e.g., State ex rel. GS Techs. Operating Co., Inc. v. Pub. Serv. Common of Mo., 116 S.W.3d 680, 694 n.9 (Mo. Ct. App. 2003) (to apply the doctrine of res ipsa loquitur, the plaintiff must prove that "the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence"); see also Smith v. Tenet Health system SL, Inc., No. 05-1173, __ F.3d __, 2006 WL 250252, *6 (8th Cir. Feb. 3, 2006) (case was not a candidate for res ipsa loquitur because amputations regularly occur without someone's negligence, and expert medical testimony was required to prove causation).[3]

"When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required."  Echard v. Barnes-Jewish Hosp., 98 S.W.3d 558, 566 (Mo. Ct. App. 2002).  Plaintiff's claims of inadequate diagnosis and treatment for heart disease raise complex issues of proper diagnosis and health care, for which expert medical testimony is required.  The Court finds as a matter of law that plaintiff's case is not one in which a lay jury could determine from common knowledge and experience that Mr. Norman's death or his lost chance of survival would not have occurred but for the negligence of the defendant.  Because plaintiff has not submitted the affidavit of a health care provider, her claims are properly dismissed in accordance with § 538.225.5.

---

[3]Plaintiff asserts that the issue for purposes of res ipsa loquitur analysis is whether a doctor would fail to refer a patient complaining of chest pain and shortness of breath for urgent care in the absence of negligence, not whether a heart attack would occur in the absence of negligence.  Plaintiff asserts that it would be obvious to a layperson that such a failure would be negligent.  This assertion is not supported by applicable Missouri precedent.  Moreover, as discussed infra in Part II, the uncontroverted facts of this case do not support the allegations in plaintiff's complaint.

The conclusion that plaintiff cannot rely on res ipsa loquitur is also supported by the principle that if a plaintiff pleads specific negligence, such pleading is inconsistent with and precludes reliance on res ipsa loquitur to establish a presumption of negligence. See Bonnot, 791 S.W.2d at 769. The Missouri Court of Appeals has explained that where a party knows the cause of the injury or how it occurred, she cannot rely on res ipsa loquitur:

> If the plaintiff proves the cause of the casualty, it is no longer possible to rely on a presumption of the defendant's negligence attributable to other unspecified acts or omissions. The res ipsa loquitur rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords.

Bonnot, 791 S.W.2d at 769 (citations and quoted case omitted) (plaintiff's evidence that sewer backup occurred because defendant was negligent in failing to inspect the sewer at proper intervals and perform necessary maintenance was proof of specific negligence and trial court properly refused to submit res ipsa loquitur theory to jury).

Plaintiff's complaint alleges that Dr. Haq was negligent in failing to refer Mr. Norman for additional care and tests given the symptoms he reported. Thus, plaintiff's complaint alleges that she knows the specific cause of the injury. Plaintiff has pleaded specific negligence, not an inability to show the cause of the injury, and therefore res ipsa loquitur is also inapplicable to her case for this reason.

The Court concludes, based on the foregoing, that plaintiff's Second Amended Complaint must be dismissed without prejudice for failure to file the health care affidavit. See § 538.225.5 ("If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.")

## II.

Plaintiff argues that even if expert testimony is required to establish a submissible case, she has adequate expert testimony to survive dismissal. The complaint alleges that prior to seeing Dr. Haq, Mr. Norman complained of shortness of breath, numbness in his left arm, fatigue, ringing in his ears, and intermittently sharp chest pain, was going to see a doctor about these symptoms, went to see Dr. Haq, and subsequently reported that he had related these symptoms to Dr. Haq. Plaintiff states that Dr. Haq admitted in his deposition testimony that if a patient complained of chest pains, shortness of breath or acute health problems, the patent should be immediately transferred into "urgent" care. Thus, plaintiff asserts she can rely on Dr. Haq's testimony to establish that the failure to refer Mr. Norman for urgent care would not typically happen absent due care, citing Rebel v. Capital Region Medical Center, 165 S.W.3d 168 (Mo. Ct. App. 2005) (expert testimony is not required in a medical negligence case if the defendant's own testimony establishes the standard of care).

To address this argument, the Court must rely on matters outside of the pleadings and therefore turns to defendant's alternative motion for summary judgment.

**Summary Judgment Standard.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.

AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of her pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

With this standard in mind, the Court finds the following facts for purposes of the instant motion for summary judgment.

**Facts**.

1. Mr. Norman's first use of the John J. Pershing V.A. Medical Center was when he visited the Primary Care Clinic at the Medical Center in Poplar Bluff, Missouri on December 9, 2002.

2. Mr. Norman was examined by Lanette L. Wilkinson, R.N., and Dr. Ihsan U. Haq at the Primary Care Clinic.

3. Mr. Norman's chief complaint on December 9, 2002 was "ringing in both ears going on for one month."

4. Mr. Norman reported no pain during his visit to the Primary Care Clinic with Nurse Wilkinson and Dr. Haq on December 9, 2002, so his pain score was recorded as zero.

5. Mr. Norman's medical record and nurse's notes prepared by defendant at its Primary Care Clinic on December 9, 2002 do not verify plaintiff's allegation that Mr. Norman communicated his complaints to any of defendant's employees on December 9, 2002.

6. Mr. Norman's medical records prepared at defendant's Primary Care Clinic on December 9, 2002 contain no mention or discussion by Mr. Norman with Nurse Wilkinson or Dr. Haq that he was having chest pain, arm pain or numbness.

7. Nurse Wilkinson examined Mr. Norman on December 9, 2002 with respect to his temperature, blood pressure, respiratory condition, pulse, current medications, mental status, chief complaint, pain assessment, level of understanding, and tobacco use screening.

8. Dr. Haq met with Mr. Norman on December 9, 2002 and discussed Mr. Norman's chief complaint, history of present illness, past medical history, personal and social history, family history, reviewed his symptoms, physically examined Mr. Norman and dictated an assessment/plan for Mr. Norman's care.

9. On December 9, 2002, Mr. Norman acknowledged to Nurse Wilkinson that he received adequate information regarding his condition and/or treatment.

10. No member of Mr. Norman's family or any co-worker was present with Mr. Norman at the Primary Care Clinic on December 9, 2002.

11. Mr. Norman presented himself to Dr. Haq on December 9, 2002 at the Primary Care Center as a routine visit with no particular symptoms of potential coronary artery disease with risk factors.

12.  Mr. Norman was treated at the Primary Care Center on December 9, 2002 on an outpatient basis and was evaluated and referred for later consultation for his complaints, which did not include chest pain, arm pain and/or numbness.

13.  In the three-week period prior to the time Mr. Norman went to the Primary Care Center, he communicated to plaintiff that he had chest pains on one occasion when they were having sexual relations, and that he had chest pain, difficulty breathing and shoulder pain one day while working at Wal-Mart.  Norman Dep. at 50-51, 57-58.  The incident Mr. Norman experienced while at Wal-Mart was witnessed by co-worker Erlene Doughtery and possibly another co-worker.  Id. at 57-58.

14.  Mr. Norman discussed his chest pain and shortness of breath in the three-week period prior to the time he went to the Primary Care Center with his wife, his younger son still living at home, and the co-worker who witnessed his episode of chest pain.  Mr. Norman told plaintiff and his son that he was going to see a doctor about it.  Id. at 63.[4]  Plaintiff does not believe that Mr. Norman told his brothers or his other son or daughter about his episodes of chest pain or shortness of breath because, "It's just the way he is.  Yes sir, he's just kind of a private person. . . .  He wouldn't want them to worry about him.  And, you now, the old I-can-take-care-of-myself type attitude.  Just didn't probably think he needed to tell them, that it was anything to tell them."  Norman Dep. at 65.

15.  VA statistics show that patients who have undergone revascularization procedure (either Percutaneous Coronary Interventions ("PCI") or Coronary Artery Bypass surgery ("CABG")) by

---

[4]For purposes of the instant summary judgment motion, the Court does not find as an uncontroverted fact that Mr. Norman discussed with his co-workers going to see a doctor, because plaintiff's deposition testimony to that effect is hearsay which cannot be considered on a motion for summary judgment.  See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir. 2003).

physicians working for the Veterans Administration have a 99.2% chance of survival for thirty days post-treatment, and a 95.6% chance of survival for one year post-treatment.

16. Due care requires a physician to transfer a patient into "urgent" care when an individual is complaining of symptoms of chest pains, shortness of breath, or acute health problems. Haq Dep. at 47.

**Discussion**.

**A. Wrongful Death**.

In order to establish a submissible case of medical malpractice under Missouri law, a plaintiff must show: (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury. Mueller v. Bauer, 54 S.W.3d 652, 656 (Mo. Ct. App. 2001). In wrongful death actions, a plaintiff must establish that but for the defendant's actions or inactions, the patient would not have died. Baker v. Guzon, 950 S.W.2d 635, 644 (Mo. Ct. App. 1997). Expert testimony is required to establish causation in a medical malpractice case where proof of causation requires a certain degree of expertise. Brickey v. Concerned Care of the Midwest, Inc., 988 S.W.2d 592, 596-97 (Mo. Ct. App. 1999). In failure-to-diagnose cases, causation is established through expert testimony that "there is a reasonable degree of medical or scientific certainty" that the defendant's negligence caused the harm. Wollen v. DePaul Health Center, 828 S.W.2d 681, 682 (Mo. 1992) (en banc).

In this case, application of the "but for" test means that plaintiff must demonstrate, through expert testimony, that there is a reasonable degree of medical certainty Mr. Norton would have survived if defendant's personnel had referred him to urgent care for testing and/or surgery on

December 9, 2002 when he came to the Primary Care Center.  See Wicklund v. Handoyo, __ S.W.3d __, 2005 WL 2850374, *5 (Mo. Ct. App. Nov. 1, 2005), transfer denied, (Jan. 31, 2006).

Defendant asserts that plaintiff has no expert medical testimony to establish any of the required elements of her case, particularly with respect to causation, and that such testimony is required.  The Court agrees.  Expert testimony is required in this failure-to-diagnose case because the issue whether Mr. Norman should have been referred for urgent care on December 9, 2002 requires a degree of medical expertise which is beyond the general knowledge of lay persons.  See Brickey, 988 S.W.2d at 596-97; see also Wicklund, 2005 WL 2850374, *5.

As to the first element, the requisite standard of care, plaintiff has no medical expert who will testify that a person who reports no pain and only a ringing in the ears for one month prior to the medical appointment should be referred to urgent care.  Plaintiff admits that the medical records of Mr. Norman's December 9, 2002 visit to the Primary Care Center reflect that Mr. Norman reported no pain and failed to communicate his complaints of chest pain, shortness of breath and numbness to Nurse Wilkinson and Dr. Haq.  Pl.'s Reply to Def.'s Statement of Uncontroverted Facts, ¶¶ 4-5. Plaintiff further admits that she has no way to raise an issue of fact which could controvert these facts. Id.[5]  Dr. Haq's testimony that a patient who complains of chest pain, shortness of breath or acute health problems should be transferred to urgent care does not establish that this standard of care

---

[5]Plaintiff's assertion that "typically an individual who is experiencing the classic symptoms of coronary heart disease, and communicates to his spouse, friends and co-workers that he is seeing a physician concerning these symptoms, is not released home without further diagnostic or medical treatment," Pl.'s Reply to Def.'s Statement of Uncontroverted Facts, ¶ 5, cannot serve to raise an issue of fact as to whether Mr. Norman actually communicated his symptoms to Nurse Wilkinson and Dr. Haq in light of the uncontroverted facts and medical records showing that he did not communicate his symptoms.

would require that Mr. Norman, who did not complain of any of these symptoms, be transferred to urgent care.

With respect to the second element, plaintiff has no medical expert who will testify that Dr. Haq was negligent in failing to refer Mr. Norman to urgent care when he complained only of a ringing in the ears. Finally, as to the third element, plaintiff has no medical expert who will testify that there is a reasonable degree of medical certainty Mr. Norton would have survived if defendant's personnel had referred him to urgent care for testing and/or surgery on December 9, 2002 when he presented himself to the Primary Care Center. Plaintiff cannot rely on statistics showing the survival people of diagnosed with coronary artery disease and treated by Veterans Administration physicians with PCI or CABG to establish that Mr. Norman would have survived if he had been referred to urgent care on December 9, 2002, or to raise a permissible inference that he would have survived if he had been referred. Thus, plaintiff cannot establish the requisite "but for" causation.

As a result of the foregoing, plaintiff cannot establish a prima facie case of medical malpractice. Defendant is therefore entitled to judgment as a matter of law on plaintiff's wrongful death claim.

**B. Lost Chance of Recovery**.

The Court now turns to defendant's motion for summary judgment on Count II, plaintiff's claim for lost chance of recovery. Missouri recognized a cause of action for lost chance of recovery in Wollen v. DePaul Health Center, 828 S.W.2d at 685. In Wollen, the plaintiff's husband died of a gastric cancer. The plaintiff alleged in her pleadings that if the cancer had been properly diagnosed and the man received appropriate treatment, he would have had a 30% chance of survival. The Missouri Supreme Court found that the widow had a cause of action against the physician. Id. at

684. The court stated, "[A] patient does suffer a harm when the doctor fails to diagnose or adequately treat a serious injury or disease. The harm suffered is not, however, the loss of life or limb. The harm is the loss of the chance of recovery." Id. (alteration added). See also LaRose v. Washington Univ., 154 S.W.3d 365, 370 (Mo. Ct. App. 2004) (affirming award of damages to woman whose chance of recovery was reduced by physician's failure to timely diagnose her ovarian cancer); Mo. Rev. Stat. § 537.021.1(1) (2000) (providing for personal representative to be appointed to maintain, inter alia, cause of action for loss chance of recovery or survival).

To prevail on such a cause of action, the chance of recovery lost must be sizeable enough to be material. Wollen, 828 S.W.2d at 685 n.3. In addition, a plaintiff in a lost chance of recovery case must satisfy the "but for" test applicable to medical malpractice cases. Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. 1993) (en banc); Morton v. Mutchnick, 904 S.W.2d 14, 17 (Mo. Ct. App. 1995). Missouri decisions indicate that in order to satisfy the "but for" test in a lost chance of recovery case, expert testimony regarding the chance of recovery is required. Plaintiff has not cited and the Court has not found any Missouri cases in which the plaintiff in a lost chance of recovery case was able to establish a submissible case without expert medical testimony.

In Wollen, the court acknowledged that statistical evidence regarding the chance of survival could not tell whether the decedent would have survived if properly diagnosed, 828 S.W.2d at 685, but stated that "[t]he issue is whether there is a permissible inference from the allegation of a statistical chance of recovery to the conclusion that death was caused by" the defendant's negligence. In LaRose, 154 S.W.3d at 371, a permissible inference of negligence was established by plaintiffs' medical expert's testimony. The expert testified that he believed the plaintiff's ovarian tumor was present and diagnosable in June 2000, and at that time, she had a sixty percent chance of surviving

17

five years with the disease had it been diagnosed. When the plaintiff was ultimately diagnosed with ovarian cancer in 2001, the medical expert testified that she had a forty percent chance of five-year survival. At the time of trial, the plaintiff had suffered a recurrence of the disease, and the medical expert stated that she only had a three to five percent chance of survival. The Missouri Court of Appeals found this testimony was sufficient evidence to support the jury's determination that the plaintiff lost a fifty-seven percent chance of survival. Id.

In contrast, in Soper v. Bopp, 990 S.W.2d 147, 150-51 (Mo. Ct. App. 1999), the plaintiffs' medical expert was not able to testify that the omitted tocolysis treatment the plaintiffs claimed cost their premature baby his lost chance of recovery would have delayed the delivery and thus allowed the baby to be born later with fewer birth defects. The defendant's attorney argued to the jury that absent such evidence, the jury could not find for the baby on the lost chance of recovery claim. The Missouri Court of Appeals held this was a correct statement of the applicable law. Id., 990 S.W.2d at 153. See also John D. Hodson, Annotation, Medical Malpractice: "Loss of Chance" Causality, 54 A.L.R.4th 10, § 2(a), at 17 (1988) (in lost chance of recovery cases plaintiffs must present expert testimony that if proper treatment had been given, better results would have followed).

In this case, plaintiff attempts to establish a submissible case of lost chance of recovery by relying on an exhibit entitled "Program Evaluation of Cardiac Care Programs in the VA; PCI Cohort – Results" which shows the percentage mortality rates for VA patients who have undergone revascularization procedures (PCI or CABG) in fiscal years 1994-1999. Pl.'s Ex. 1. Plaintiff asserts that this exhibit is sufficient to establish that if Mr. Norman had been properly diagnosed, he would have had over a ninety-nine percent (99%) chance of survival for thirty days post-surgery, and over a ninety-five percent (95%) chance of survival for one year post-surgery.

The Court disagrees. Plaintiff's claim for lost chance of survival fails for largely the same reasons as her claim for wrongful death. First, plaintiff cannot establish that the requisite standard of care would have required Mr. Norman to be referred to urgent care or to undergo PCI or CABG based on his complaint of ringing in the ears, because plaintiff has no expert testimony to that effect. Second, plaintiff cannot establish that Dr. Haq was negligent in failing to refer Mr. Norman to urgent care for PCI or CABG based on his complaint of ringing in the ears, again because she lacks the necessary expert testimony.

Finally, plaintiff cannot establish the requisite "but for" causation because she has no evidence to establish that if Mr. Norman had been referred to urgent care, he would have had a material chance of survival that was lost. See Wollen, 828 S.W.2d at 685 n.3. Plaintiff does not have the necessary expert testimony concerning Mr. Norman's claimed lost chance of survival to establish a permissible inference of defendant's negligence. See Soper, 988 S.W.2d at 150-51 (in the absence of expert testimony that a doctor's omission cost the plaintiff his lost chance of recovery, the jury could not find for the plaintiff); cf. LaRose, 154 S.W.3d at 370 (plaintiff's statistical chance of recovery was established through expert testimony and raised a permissible inference of defendant's negligence).

Plaintiff's statistical evidence concerning the survival rate of V.A. patients who undergo PCI or CABG procedures does not raise a permissible inference that Mr. Norman would have had a material chance of survival if he had been referred to urgent care. Plaintiff's reliance on these statistics ignores the fundamental problem in this case: the uncontroverted evidence shows Mr. Norman did not raise his complaints of shortness of breath, chest pain and numbness with Dr. Haq, and therefore no duty arose to refer Mr. Norman to urgent care. In addition, there is no evidence that Mr. Norman should have been treated with a PCI or CABG procedure if he had been referred to

19

urgent care, or that he would have had a material chance of survival if he had been treated with one of these procedures. In the absence of such evidence, the survival rate of patients who were diagnosed with heart disease and treated with PCI or CABG procedures does not assist plaintiff in establishing causation.

Defendant has shown that plaintiff cannot establish a prima face case of lost chance of survival, and therefore no genuine issues of material fact remain which preclude judgment in defendant's favor. Defendant's motion for summary judgment should therefore be granted on plaintiff's claims in Count II.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff's claims for wrongful death and for lost chance of recovery should be dismissed without prejudice for failure to file the health care affidavit required by Mo. Rev. Stat. § 538.225.1. In the alternative, defendant is entitled to summary judgment on plaintiff's claims for wrongful death and lost chance of recovery.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss is **GRANTED**. [Doc. 11]

**IT IS FURTHER ORDERED** that defendant's alternative motion for summary judgment is **GRANTED**. [Doc. 11]

**IT IS FURTHER ORDERED** that defendant's motion for continuance of the trial setting is **DENIED as moot**. [Doc. 30]

An appropriate judgment and order of dismissal will accompany this memorandum and order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  13th  day of February, 2006.